UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

In re: MATTHEW LOWELL HOWLAND
and MEAGAN LARAE HOWLAND,

     Debtors,

_____

PHAEDRA SPRADLIN, TRUSTEE

     Appellant,

V.

BEADS AND STEEDS INNS, LLC,

     Appellee.

CIVIL ACTION NO. 5:14-426-KKC

OPINION AND ORDER

*** *** ***

The Appellant, Phaedra Spradlin, Trustee, appeals the memorandum opinions and orders [Adv. Doc. 20, 21, 24, 25] entered by the United States Bankruptcy Court, Eastern District of Kentucky, Adv. No. 14-5019, dated August 22, 2014 and October 2, 2014. For the following reasons, the Court affirms both of the Bankruptcy Court's orders.

## I. BACKGROUND

The following facts are set forth in the Trustee's Complaint and Amended Complaint. [Adv. Doc 1, 22-1]. On June 20, 2007, the Debtors entered into a contract to purchase approximately 133 acres of real estate located at 9863 Lexington Road, Lancaster, KY 40444 (the "Farm") for $1.6 million (the "2007 Sales Contract"). [Adv. Doc. 22-1, Amended Complaint ¶ 9.]

1

The Debtors are the sole members of Meadow Lake Horse Park, LLC ("Meadow Lake"). [Adv. Doc. 22-1, Amended Complaint ¶ 8.] On July 19, 2007, the Debtors and Meadow Lake entered into an Assignment in which the Debtors assigned their rights under the 2007 Sales Contract to Meadow Lake. [Adv. Doc. 22-1, Amended Complaint ¶ 10.] The Debtors received no consideration from Meadow Lake for this assignment.

On July 25, 2007, Meadow Lake took out a $1.6 million bank loan to be secured by a mortgage on the Farm. [Adv. Doc. 22-1, Amended Complaint ¶ 11.] The Debtors guaranteed the loan to Meadow Lake. [Adv. Doc. 22-1, Amended Complaint ¶ 11.] On July 26, 2007, the sale of the Farm to Meadow Lake was completed. [Adv. Doc. 22-1, Amended Complaint ¶ 12.]

In November, 2010, the Debtors used proceeds of their personal income tax return to repay approximately $760,000 of Meadow Lake's bank loan. [Adv. Doc. 22-1, Amended Complaint ¶ 15.] Meadow Lake did not give any consideration to the Debtors or promise repayment.

On December 28, 2010, the Debtors, as members of Meadow Lake, executed a Purchase Agreement between Meadow Lake and Beads and Steeds Inns, LLC. [Adv. Doc. 22-1, Amended Complaint ¶ 18.] Under this agreement, Meadow Lake sold the Farm and certain mobile homes located on the Farm to Beads and Steeds for $800,000 ("2010 Transfer"). [Adv. Doc. 22-1, Amended Complaint ¶¶ 18-19.] The Trustee alleges the value of the Farm was much greater at the time of the 2010 Transfer. [Adv. Doc. 22-1, Amended Complaint ¶ 20.]

Following the 2010 Transfer, the Debtors continued to operate the Farm as a horse boarding and training facility, a bed and breakfast, and an event facility. [Adv. Doc. 22-1, Amended Complaint ¶ 25.] Under a lease executed in June, 2011, the Debtors paid Beads

and Steeds $1,000 a month to use the Farm and paid for certain expenses. [Adv. Doc. 22-1, Amended Complaint ¶ 27.] The Trustee believes this amount was less than market value. [Adv. Doc. 22-1, Amended Complaint ¶28.]

The Trustee alleges that during all of the above described events, the Debtors disregarded the corporate separateness of Meadow Lake by using vehicles and equipment owned by Meadow Lake for personal use, transferring their interest in the 2007 Sales Contract to Meadow Lake for no consideration, opening a revolving credit line in Meadow Lake's name and using it to incur personal debt, and paying part of Meadow Lake's mortgage with their personal income tax return. [Adv. Doc. 22-1 Amended Complaint ¶¶ 13-17.]

The Debtors filed a Chapter 7 bankruptcy petition on May 8, 2012. [Adv. Doc. 22-1, Amended Complaint ¶ 34.] In their petition, the Debtors listed Meadow Lake as one of "All Other Names used by the Debtor in the last 8 years." [Adv. Doc. 22-1, Amended Complaint ¶ 16.]

On May 6, 2014, the Trustee filed the Complaint in this proceeding against Beads and Steeds, seeking to avoid the 2010 Transfer as a fraudulent conveyance under § 548(a)(1)(B) and K.R.S. § 378.020, via §544(b). In response, the Defendant moved for judgment on the pleadings for failure to state a claim upon which relief may be granted, arguing that the Trustee only alleged a transfer by Meadow Lake, not the Debtors. [Adv. Doc. 9.] The Trustee countered that under a theory of reverse piercing of the corporate veil, the Debtors and Meadow Lake should be considered one and the same.

In an Opinion and Order dated August 22, 2014, ("August Opinion and Order") the Bankruptcy Court concluded that the Trustee cannot proceed on a reverse veil piercing

3

theory under Kentucky law, but permitted the Trustee to move to amend the Complaint to add a substantive consolidation theory. [Adv. Doc. 20 at 12-13.]

The Trustee moved to amend the complaint [Adv. Doc. 22] and filed the proposed Amended Complaint. In a second Opinion and Order dated October 2, 2014, ("October Opinion and Order"), the Bankruptcy Court found that the Trustee had failed to state a claim for substantive consolidation. [Adv. Doc. 24 at 10-11.] It therefore granted the Defendant's Motion for Judgment on the Pleadings and denied the Trustee's Motion for Leave to File the Amended Complaint. [Adv. Doc. 25.]

The Trustee now appeals the August Opinion and Order as well as the October Opinion and Order.

## II. STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court.  28 U.S.C. § 158(a). The bankruptcy court's legal determinations are reviewed de novo. *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 474 (6th Cir. 2010). A bankruptcy court's decision involving application or interpretation of state law is a conclusion of law reviewed de novo. *Merringer v. Schramm (In re Schramm)*, 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010).

"Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are analyzed under the same *de novo* standard as motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008).

The denial of a motion for leave to amend the complaint ordinarily is reviewed for abuse of discretion. *Dubuc v. Green Oak Twp.,* 312 F.3d 736, 743 (6th Cir. 2002). However, when denial is on the basis of futility, the decision is reviewed de novo. *Id.*

4

## III. ANALYSIS

Under KRS § 275.010(2), an LLC is a legal entity distinct from its members, meaning the Debtors and Meadow Lake are separate legal entities. Meadow Lake did not file bankruptcy, so, despite the fact that the Debtors are its sole members, Meadow Lake is not a debtor in this proceeding.

In order to pursue her federal and state fraudulent conveyance claims, the Trustee needs to consolidate the Debtors and Meadow Lake into a single entity. To use §548, §544, and K.R.S. § 378.020 to avoid the transfer of the Farm from Meadow Lake to Beads and Steeds, the Trustee must show that the "debtor" participated in the transfer. *See* 11 U.S.C. § 548(a)(1) ("transfer...of an interest of the debtor in property…"); §544(b)(1) ("transfer of an interest of the debtor in property"); K.R.S. § 378.020 ("transfer…made by debtor…"). Put simply, Meadow Lake is the entity that made the transfer, but it is not the "debtor." The Trustee is attempting to use either a reverse veil piercing or substantive consolidation theory to disregard the separate existence of Meadow Lake and thereby treat the 2010 Transfer as if it were made by the Debtors. However, the Trustee cannot successfully rely on either theory to reach her desired result.

### A. Reverse Veil Piercing

The Trustee may not use reverse veil piercing to consolidate the Debtors and Meadow Lake under Kentucky law as it currently exists. Kentucky Courts have yet to officially adopt reverse veil piercing. Furthermore, even if reverse veil piercing was accepted in Kentucky, it is reasonable to believe that it would be employed only as a remedy to allow creditors recovery against the assets of a business entity, rather than a means of consolidating a business entity with its separate owners. Therefore, the Trustee stretches too far in her attempted use of reverse veil piercing under current Kentucky law.

5

Courts are "deeply split" in accepting reverse veil piercing. *ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re ALT Hotel, LLC)*, 479 B.R. 781, 801 (Bankr. N.D. Ill. 2012). "A 'significant minority' of courts reject outside reverse piercing…and courts 'are overwhelmingly hostile' to insider reverse piercing." *Id.* at 801-02 (citing 1 Philip I. Blumberg, et al., *Blumberg on Corporate Groups* § 10.02 at 14-29, 14-22 (2007 Supp.)). Indeed, reverse veil piercing is not without its critics. *See Postal Instant Press, Inc. v. Kaswa Corp.,* 77 Cal. Rptr. 3d 96, 105 (Cal. Ct. App. 2008) ("conversion and fraudulent conveyance already afford judgment creditors protection…[o]utside reverse piercing is an unacceptable shortcut to pursue those remedies."); *Acree v. McMahan*, 585 S.E.2d 873, 875 (Ga. 2003) ("Allowing outsider reverse piercing claims would constitute a radical change to the concept of piercing the corporate veil in this state and, thus, should be created by the General Assembly and not by this Court."). Reverse veil piercing is by no means a widely accepted legal principle.

There are two recognized types of reverse veil piercing – insider and outsider. Insider reverse veil piercing allows a shareholder to disregard the corporation of which he is a part for his own benefit. *Hibbs v. Berger*, 430 S.W.3d 296, 310 (Mo. Ct. App. 2014). On the other hand, outsider veil piercing occurs where a third-party creditor seeks to reach the assets of a corporation to satisfy the debts of a corporate insider. *Grimmett v. Mccloskey (In re Wardle)*, 2006 Bankr. LEXIS 4817, *20 (B.A.P. 9th Cir. Jan. 31, 2006); *Turner v. Andrew*, 413 S.W.3d 272 at 277 (Ky. 2013) (describing outsider reverse piercing as a situation in which "the creditor of an individual who is the sole member of an LLC seeks to pierce the veil to get at LLC assets to satisfy the member's personal debt.").

In this matter, the Trustee could potentially use both insider and outsider reverse piercing, each of which are dependent on Kentucky law. First, the Trustee stands in the

6

shoes of the Debtors, assuming any causes of action belonging to them. In this position, the Trustee can pursue an insider reverse piercing approach if it is allowed under Kentucky law. *Butner v. United States*, 440 U.S.48 (1979) ("Whether a particular cause of action is available to the debtor, and thus constitutes 'property of the estate,' is determined by state law."). Furthermore, under § 544, the Trustee also stands in the shoes of the Debtors' judgment creditors and may bring claims available to them. If Kentucky law allows such creditors to use outsider reverse piercing, then the Trustee may also use that approach. 11 U.S.C. § 544. Since Kentucky has not adopted or rejected reverse veil piercing generally, this distinction is not vital to the Court's decision, but it is helpful to note in order to interpret the statements of Kentucky courts regarding reverse veil piercing.

Kentucky courts have neither accepted nor rejected reverse veil piercing. *Turner v. Andrew*, 413 S.W.3d 272, 277 n.4 (Ky. 2013).[1] Therefore, this Court is in the difficult position of having to predict the trajectory of Kentucky law on the subject. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) ("[W]hen evaluating an undecided question of Kentucky law, a federal court…must make the 'the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question.'") (citations omitted).

Two recent decisions from Kentucky broach reverse piercing, but do not provide a definitive answer. First, in *Turner v. Andrews*, the Kentucky Supreme Court acknowledged both insider and outsider reverse piercing, and specifically noted the scarce use of the insider theory by other jurisdictions. 413 S.W.3d at 277. The court also observed that at

---

[1] The Appellee argues that it is uncertain whether the Kentucky Supreme Court would apply even traditional veil piercing to limited liability companies. [DE 5 at 9, n.4.]; *see Parnell v. Shannon*, 425 S.W.3d 58, 75 fn.15 (Ky. 2014). Given the Kentucky Supreme Court's recent statements in *Turner v. Andrew*, and characterization of reverse piercing as involving an LLC and sole member, this Court can safely assume for purposes of this appeal that Kentucky courts would apply veil piercing to LLCs generally. 413 S.W.3d at 277 ("The doctrine can also apply to limited liability companies.").

least one commentator has predicted Kentucky would not recognize reverse piercing. *Id.* at 277 n.4. Second, in *Williams v. Oates*, the Kentucky Court of Appeals likewise recognized the "speculation that Kentucky would probably not recognize reverse veil piercing," and also neither accepted nor rejected reverse piercing. No. 2012-CA-000327-MR, 2014 WL 2937773 (Ky. Ct. App. June 27, 2014).

This Court cannot easily determine from the above cases whether reverse piercing would be accepted or rejected by Kentucky courts. On one hand, the Kentucky Supreme Court's citation to *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir. 1979) and scholarly speculation that Kentucky would not recognize reverse piercing suggests the court leans toward rejecting the principle. *Turner,* 413 S.W.3d at 277 n.4. On the other hand, the speculation discussed in *Turner* and *Williams* focused only on insider reverse piercing, where it is the corporate insider who seeks a benefit from piercing. The Kentucky Supreme Court even noted that insider reverse piercing is "employed in that rare instance where equity is perceived to require disregard of the entity." *Turner*, 413 S.W. 3d at 277. This bankruptcy case presents a unique situation different from other insider piercing scenarios. Here, it is not the insiders who previously benefitted from the LLC's liability shield that stand to gain from the insider reverse piercing, but rather the creditors. Arguably, equity favors disregard of the entity in this case. [DE 6, Appellant's Reply at 4,5.] Furthermore, the Kentucky Supreme Court's tone in *Turner* suggests it is more amenable to outsider reverse piercing than insider, and may be inclined to accept one theory and reject the other.

In the end, this Court is still left reading tea leaves, as no Kentucky court has issued a definitive ruling on reverse piercing. In such situations, "federal courts must be cautious when making pronouncements about state law and '[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly

expands liability, we should choose the narrower and more reasonable path.'" *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir.2004)). In addition, other federal courts have been reluctant to recognize reverse veil piercing when the remedy has not yet been accepted by the state. *See, e.g., ALT Hotel, LLC*, 479 B.R. at 801; *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990); *Estate of Daily v. Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 844 (D.Haw. 1995). Against such a backdrop, this Court is weary to adopt reverse piercing where Kentucky courts have yet to give a definitive answer.

However, this Court does agree with the Bankruptcy Court that if Kentucky were to adopt reverse piercing, it would likely adopt the principle as a remedy rather than a means of consolidating entities. Under Kentucky law, piercing of the corporate veil "is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability." *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky. Ct. App. 2009) (citing William Meade Fletcher, *Fletcher Cyclopedia of the Law of* Corporations, § 41.29 (2006); *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012) ("Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation."). Thus, under Kentucky law, piercing the corporate veil is viewed as a remedy that allows a creditor who has already prevailed against a corporation to collect from the assets of a shareholder when the corporate assets are insufficient.

The Kentucky Supreme Court has described the "traditional" piercing scenario as a situation in which "an unpaid LLC creditor seeks to pierce the veil of an LLC to reach the assets of its member." *Turner*, 413 S.W.3d at 277. The case *Schultz v. General Elec. Healthcare Financial Services, Inc.* provides a set of facts illustrating the "traditional"

scenario. 360 S.W.3d 171 (Ky. 2012). In *Schultz*, a corporation, Intra-Med, leased medical equipment from GE, then breached the contract by failing to make payments. *Id.* at 173. GE won a judgment of over $4.7 million against Intra-Med, but was able to collect only about $700,000 from the corporation. *Id.* However, GE learned that Shultz, the sole shareholder, had used the company for his own purposes. *Id.* GE then sought to pierce the corporate veil to reach Shultz's personal assets and satisfy the remainder of its judgment. *Id.* This is the classic use of piercing that is contemplated by current Kentucky law: an unsatisfied judgment creditor seeking to pierce the corporate veil to satisfy an outstanding debt. This underscores Kentucky's treatment of piercing as a remedy to satisfy an already existing liability, not a means of merging two separate entities on the front end in order to pursue a claim.

The Trustee cites two Kentucky cases, which she believes show that Kentucky law may permit reverse veil piercing as a way to consolidate separate entities: *Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974) ("Generally a corporation will be looked upon as a separate legal entity but when the idea of separate legal entity is used to justify wrong, protect fraud or defend crime the law will regard the corporation as an association of persons."); *Louisville & N.R. Co. v. Carter*, 10 S.W.2d 1064, 1068 (Ky. 1927) (veil piercing results in recognition of the shareholders and company as "united in one body.").

As the Bankruptcy Court pointed out, these cases were decided before *White v. Winchester Land Development Corp.*, 584 S.W.2d 56 (Ky. Ct. App. 1979), the principal case on veil piercing in Kentucky. This Court declines to rely solely on snippets of language from two older cases to find Kentucky law allows consolidation via veil piercing, especially when

10

modern cases contain no such language and no Kentucky case has actually used piercing in that way.

The bankruptcy court cases cited by the Trustee [DE 4, Appellant's Brief at 11] likewise do not convince the Court that it should allow consolidation based on reverse veil piercing. Even the Trustee herself recognizes that the bankruptcy courts in *Rodriguez v. Four Dominion Drive, LLC (In re Boyd)*, Adv. No. 12-05107, 2012 Bankr. LEXIS 4968, *10-25 (Bankr. W.D. Tex. Oct. 22, 2012), and *Searcy v. Knight (In re Am. Int'l Refinery),* 402 B.R. 728, 743-48 (Bankr. W.D. La. 2008) applied applicable Texas and Nevada state law explicitly permitting the use of reverse veil piercing to consolidate entities. [DE 4, Appellant's Brief at 11.] There is no Kentucky law permitting reverse veil piercing generally, let alone precedent authorizing consolidation through piercing. As to the third bankruptcy case, *Hovis v. United Screen Printers (In re Elkay Indus.)*, 167 B.R. 404 (D.S.C. 1994), the court found *"no* South Carolina law addressing this issue." *Id.* at 410-11. Here, there is at least *some* Kentucky law on the issue, and those cases have treated veil piercing only as a remedy. This Court should not stray from Kentucky precedent that indicates piercing is a remedy when no cases exist in Kentucky where piercing has been used to consolidate separate entities.

Given the absence of clear guidance from Kentucky courts, and mindful that in this situation federal courts should generally adopt a narrower interpretation that restricts liability rather than expands it, *Combs*, 354 F.3d at 577, the Trustee cannot use reverse veil piercing to disregard the separate existence of the Debtors and Meadow Lake. The Trustee's attempt to rely on reverse piercing to consolidate the two entities is heavily strained by the fact that Kentucky courts have yet to definitely rule whether the theory is valid even in a "traditional" sense under Kentucky law.

11

**B. Substantive Consolidation**

Alternatively, the Trustee seeks to use substantive consolidation to unite the Debtors and Meadow Lake in order to pursue her fraudulent conveyance claims.

In the October Opinion and Order, the Bankruptcy Court ultimately held that the Trustee failed to state a claim for substantive consolidation because the Trustee lacks facts sufficient to successfully raise the claim. [Adv. Doc. 24 at 5-9, 10]. This Court agrees and finds that the Bankruptcy Court correctly denied the Trustee's motion to amend the complaint because the proposed amendments are futile.

FED. R. BANK. P. 7015 (incorporating FED. R. CIV. P. 15 by reference) provides the bankruptcy court should freely grant leave to amend if justice so requires. A court, however, need not grant leave to amend under Rule 15 if the amendment would be futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 (6th Cir. 2005).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v.* Iqbal, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. In the complaint, there must be enough factual matter to "raise a reasonable expectation that discovery will reveal evidence" giving rise to a right to relief. *Twombly*, 550 U.S. at 556.

12

Substantive consolidation is a "judicially created doctrine that treats separate legal entities as if they were merged into a single entity, pooling the assets and liabilities of the two entities, so that the assets of the two entities may result in a common fund available to satisfy the debts of both entities…to ensure the equitable treatment of all creditors." *Simon v. ASIMCO Techs., Inc. (In re Am. Camshaft Specialties, Inc.*, 410 B.R. 765, 778 (Bankr. E.D. Mich. 2009). Substantive consolidation is an extreme remedy that should rarely be used, "particularly where the entity sought to be consolidated is not itself already a debtor in bankruptcy." *Id.* at 787.

The Sixth Circuit has recognized substantive consolidation "without criticism." *Huntington National Bank v. Richardson (In re Cyberco Holdings, Inc.)*, 734 F.3d 432, 439 (6th Cir. 2013). Multiple courts within this circuit have adopted the criteria from *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005), for determining whether substantive consolidation is appropriate; *see In re Dott Acquisition, LLC,* Adv. No. 11-05526-PJS, 2014 Bankr. LEXIS 60, 100 (Bankr. E.D. Mich. Feb. 13, 2014); *Walls v. Centurion Asset Mgmt., Inc. (In re Bolze*), Adv. No. 09-3035, 2009 Bankr. LEXIS 2273, *9-10 (Bankr. E.D. Tenn. July 23, 2009); *In re Am. Camshaft Specialties, Inc.,* 410 B.R. at 778. Furthermore, the Trustee advances this set of criteria in her brief. [DE 4, Appellant's Brief at 13.] Under the *Owens Corning* criteria, to obtain substantive consolidation, the proponent of consolidation must show that "(i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive or hurts all creditors." *In re Owens Corning*, 419 F.3d at 211. This Court recognizes that the Trustee need only satisfy one of these prongs.

13

In support of her assertion that the first *Owens Corning* criterion is met, the Trustee points to the Debtors' bankruptcy petition. [DE 4, Appellant's Brief at 14.] The Trustee argues the fact that the Debtors listed Meadow Lake on their petition as one of "All other names used by the Debtor in the last 8 years" is evidence that the Debtors, and by extension their creditors, treated the Debtors and Meadow Lake as one in the same. Even viewed in the light most favorable to the Trustee, this fact and the inference the Trustee attaches to it are insufficient to raise the right to substantive consolidation above the speculative level. The Debtors themselves entered into an Assignment to transfer their rights under the 2007 Sales Contract to Meadow Lake rather than simply purchasing the Farm with Meadow Lake funds, which suggests the Debtors recognized some degree of formal separation. Moreover, the Amended Complaint itself indicates that creditors recognized the Debtors and Meadow Lake were distinct: when Meadow Lake borrowed money, the Debtors provided personal guaranties to the lender. [Adv. Doc. 22-1, Amended Complaint, ¶ 11.] The Trustee has not pled sufficient facts to allow the Court to draw a reasonable inference that creditors treated the Debtors and Meadow Lake as a single entity. *Iqbal*, 556 U.S. at 663.

The Trustee also failed to plead sufficient facts showing that the assets of the Debtor and Meadow Lake are "so hopelessly scrambled" that separating them would harm the creditors. The Trustee alleges that the Debtors used vehicles and equipment owned by Meadow Lake for personal use, transferred their interest in the 2007 Sales Contract to Meadow Lake for no consideration, opened a revolving credit line in Meadow Lake's name and used it to incur personal debt, and paid part of Meadow Lake's mortgage with their personal income tax return. [Adv. Doc. 22-1, Amended Complaint¶¶ 14-15.] These allegations suggest that the Debtors used Meadow Lake assets as their own and

14

contributed personal funds to the LLC, but do not indicate why any mixing of assets cannot be undone without prohibitive cost, as is required for substantive consolidation. More specific factual allegations about current financial statements and bank accounts, or allegations about the lack of such records or their confusing nature, could have supported an inference that assets and liabilities are hopelessly scrambled, but the allegations actually presented are insufficient.

The Trustee had two years before filing the original Complaint to investigate and compile facts showing that the Debtors disregarded the separateness of Meadow Lake. Given that period of time and the extensive document request powers available to a bankruptcy trustee,  the lack of specificity in the Amended Complaint means the Trustee has failed to "raise a reasonable expectation that discovery will reveal evidence" giving rise to a right to substantive consolidation of the Debtors and Meadow Lake. *Twombly*, 550 U.S. at 556. Further discovery does not appear likely to yield evidence warranting such an exceptional remedy.

This Court also agrees with the Bankruptcy Court's reservations about circumventing the provisions of the bankruptcy code related to involuntary bankruptcy by granting substantive consolidation of Meadow Lake, a non-debtor. [Adv. Doc. 24 at 8.]; *see also Law v. Siegel*, 134 S.Ct. 1188, 1194 (2014) (recognizing limits on a bankruptcy court's inherent equitable powers).

Since this Court has held that the Trustee may not rely on either reverse veil piercing or substantive consolidation, it need not address the other issues raised by the Appellant. *See* [DE 4, Appellant's Brief at 16-17.]

## IV. CONCLUSION

The Trustee's underlying fraudulent transfer claim is predicated on the availability of reverse veil piercing or substantive consolidation. The Trustee needs to use one of the theories to demonstrate that the Debtors transferred the Farm to Beads and Steeds. However, for the reasons discussed, the Trustee has fallen short in her reverse veil piercing and substantive consolidation theories, and thus cannot maintain her claims under §548, §544, or KRS § 378.020 to avoid the 2010 Transfer. Accordingly, **IT IS ORDERED** that the Bankruptcy Court's orders denying the Trustee's Motion to Amend the Complaint and granting the Defendant's Motion for Judgment on the Pleadings are **AFFIRMED.**

Dated June 7, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY